IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>J. LEONARD PADILLA, NELLY PATINO, ROSE MORENO-PADILLA, et al.,<br><br>          Defendants. | CIV-S-01-2301 DFL GGH<br><br>MEMORANDUM OF OPINION<br>AND ORDER |

Plaintiff United States ("the government") moves for partial summary judgment against defendants J. Leonard Padilla ("Padilla") and Nelly Patino ("Patino"). The government separately moves for summary judgment on count one of the complaint against defendant Rose Moreno-Padilla ("Moreno-Padilla").[1]

---

[1] As there are two separate motions, the motion for partial summary judgment will be cited as ("PSJ Mot."), and the motion

1

I.

The government filed this suit on December 17, 2001, seeking to foreclose on a sixty-acre property in Natomas (the "property" or the "Natomas property") to satisfy tax liabilities owed by Padilla, Moreno-Padilla, and Carlos Alcala, and to reduce to judgment the tax liability of Moreno-Padilla and Alcala.[2]  The tax assessments against Padilla are the same as those at issue in the related suit, United States v. J. Leonard Padilla, Alejandro Reid Padilla, and State of Cal. Franchise Tax Bd., No. CIV-S-01-2300-DFL-GGH (E.D.Cal. filed December 17, 2001).  (FAC ¶¶ 10-48.)  The tax assessments against Moreno-Padilla arise out of her unpaid income tax liability from the tax years 1996 and 1997.  (Id. ¶¶ 49-54.)

The Natomas property was purchased by Padilla and Moreno-Padilla in 1980 "in trust" for their children.  (PSJ Mot. at 3.) As part of Padilla and Moreno-Padilla's divorce proceeding in 1993 in Sacramento County Superior Court, the court ruled that the two "intended the trust to be revocable and not to benefit the three children," such that legal title to the property was held equally by Padilla and Moreno-Padilla.  (FAC ¶¶ 72, 78.) Part of the purchase price for the Natomas property was paid with a $25,000 loan from the prior owners, memorialized in a note and

---

for summary judgment on count one will be cited as ("Count 1 Mot.")

[2] Carlos Alcala was dismissed from this suit by agreement of the parties on November 18, 2004.

2

secured by a deed of trust.  (Schrock Decl. Ex. 3.)  In 1987, the note and deed of trust were purchased by Patino, giving her the legal right to collect the $25,000 from Padilla and Moreno-Padilla.  (FAC ¶¶ 74-75.)  In February 2000, Patino paid $45,655.29 in property taxes owed on the Natomas property.  (Patino Opp'n Ex. C.)

On October 18, 2004, the government moved for partial summary judgment on two issues: (1) whether the tax liens against Padilla attach to a one-half interest in the Natomas property, and (2) whether Patino has a valid lien interest in the property.  (PSJ Mot. at 2.)  On February 11, 2005, the government filed a separate motion for summary judgment on count one of the complaint, to reduce to judgment the tax assessments against Moreno-Padilla.  (Count 1 Mot. at 1.)

II.

A. Attachment of Liens to Padilla's Interest in the Natomas Property

A federal tax lien arises automatically at the time of the assessment of any unpaid tax and applies against all property and rights to property, whether real or personal, belonging to the taxpayer.  26 U.S.C. §§ 6321, 6322.  To establish that a tax lien attached to Padilla's one-half interest in the Natomas property, the government must show that: (1) Padilla's tax liability was properly assessed; and (2) Padilla had an interest in the Natomas property after the tax liability arose.  These two issues have been decided by other courts, such that collateral estoppel bars

3

relitigation.

Collateral estoppel prevents relitigation of issues that have been actually, necessarily, and finally determined by a court of competent jurisdiction. <u>Montana v. United States</u>, 440 U.S. 147, 153, 99 S.Ct. 970 (1979). The issue of whether Padilla's tax liability was properly assessed was actually and necessarily determined in <u>United States v. J. Leonard Padilla, Alejandro Reid Padilla, and State of Cal. Franchise Tax Bd.</u>, No. CIV-S-01-2300-DFL-GGH (E.D.Cal. filed December 17, 2001). The pendency of an appeal in that case does not affect the finality of the judgment for purposes of collateral estoppel. <u>See, e.g.</u>, <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 327 (9th Cir. 1988); <u>Hawkins v. Risley</u>, 984 F.2d 321, 325 (9th Cir. 1993). Additionally, the issue of whether Padilla has an interest in the property was necessarily and finally decided by the Sacramento County Superior Court in the 1993 proceeding. (Schrock Decl. Ex. 2.) Therefore, the motion for summary judgment on the issue of the attachment of Padilla's established tax liability to the Natomas Property is GRANTED. A tax lien of $2,158,760.41, plus interest and penalties accruing by operation of law since February 29, 2004, attaches to Leonard Padilla's one-half interest in the Natomas property.

<u>B. Patino's Interest in the Natomas Property</u>

The government moves for summary judgment on the issue of whether Patino has a valid, superior lien on the Natomas property. (PSJ Mot. at 7-9.) Patino asserts two separate lien

4

interests in the property: (1) a lien interest arising from the 1987 purchase of the note and deed of trust; and (2) a lien interest arising from the payment of property taxes.  (Id.)

The government asserts that any lien created by the note and deed of trust has now expired, relying on Cal. Civ. Code § 882.020(a)(1).  (Id.)  However, as the government concedes, this provision is inapplicable unless the last date fixed for payment is ascertainable from a recorded document.  (Pl.'s Supplement to PSJ Mot. at 2-3; Reply at 3.)  As the government has not provided evidence that the note, or any other document containing the final payment date of July 2, 1987, was recorded, summary judgment cannot be granted on this basis.[3]

The government argues that no valid and superior lien was created by the payment of property taxes in the absence of a written and recorded lien agreement.  (PSJ Mot. at 8-9.)  In opposition, Patino argues that she has an "equitable interest" in the property as either a lender, investor, or surety, and that there are factual issues regarding the nature of her interest. (Patino Opp'n at 3, 6-7.)

Although the California codification of the statute of frauds generally requires a written agreement to create an interest in property, the "equitable lien" doctrine is an exception to this general requirement.  Cal. Civ. Proc. Code §

---

[3] In its supplemental brief, the government asks that the court determine the amount of this lien.  However, that issue is beyond the scope of this motion.

5

1971; Jones v. Sacramento Sav. & Loan Ass'n, 248 Cal.App.2d 522, 530-31, 56 Cal.Rptr. 741 (1967); Grappo v. Coventry Fin. Corp., 235 Cal.App.3d 496, 509, 286 Cal.Rptr. 714 (1991). An equitable lien arises where the claimant advances money to the real property owner and both parties anticipate that the real property will serve as security for the debt. Id.

In her deposition testimony, Patino indicates that although she voluntarily paid the property taxes, she considered her payment an "investment" and assumed she would be reimbursed for the taxes, with interest, at the time the property was sold. (Schrock Decl. Ex. 4.) This evidence supports, or at the least, does not negate, an equitable lien on the property. There is no evidence of Moreno-Padilla or Padilla's intentions concerning Patino's payment of the property taxes. Because the government has not conclusively demonstrated the absence of a valid equitable lien on all or part of the Natomas property, the Statute of Frauds does not preclude Patino's lien.

However, the government, citing Cal. Civ. Code § 1217, also advances an alternative argument, that even if Patino has a valid lien, it is not superior to the government's tax lien. (PSJ Mot. at 9.) However, § 1217 merely clarifies that an unrecorded instrument is valid as between the parties; it does not support the contrary assertion that an unrecorded agreement is never valid as against third-parties. Indeed, under California's "race-notice" priority system, an unrecorded agreement may be valid to establish priority over all except subsequent bona fide

6

purchasers or encumbrancers for value who first record their interest.  Cal. Civ. Code § 1214.  A judgment creditor is not a bona fide purchaser or encumbrancer for purposes of the statute. See, e.g., Livingston v. Rice, 131 Cal.App.2d 1, 3, 280 P.2d 52 (1955); Wells Fargo Bank v. Pal Inv., Inc., 96 Cal.App.3d 431, 438, 157 Cal.Rptr. 818 (1979). Beyond this, California law provides that "[o]ther things being equal, different liens upon the same property have priority according to the date of their creation."  Cal. Civ. Code § 2897.

Moreover, California law regarding priority is largely irrelevant to this case because federal law governs the relative priority of tax liens, as laid out in 26 U.S.C. § 6323.  Feiler v. United States, 62 F.3d 315, 316-17 (9th Cir. 1995).  In general, in the absence of a controlling federal statute, the priority of a federally created tax lien is determined by the rule of "first in time is first in right."  In re Kimura, 969 F.2d 806, 813 (9th Cir. 1992).

However, § 6323 also creates certain exceptions to this general rule of first in time, first in right.  Specifically, § 6323(a) provides that the automatic tax lien imposed by § 6321 "shall not be valid as against any . . . holder of a security interest . . . until notice" of the tax lien has been filed.  A "security interest" is defined as:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has

7

      become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h).

Assuming Patino can establish the existence of an equitable lien, her security interest, for purposes of § 6323(h), came into existence on the date she paid the taxes. Therefore, although the lien authorized by § 6321 attached automatically to Padilla's interest in the property, that lien is not valid as against Patino unless the government filed proper notice of its lien prior to February 2000. As the government has not provided any evidence as to when it filed notice of its lien in accordance with § 6323(f), it has not demonstrated, as a matter of law, the superiority of its lien.

Summary judgment is DENIED on the issue of the existence and superiority of Patino's liens.

### C. Moreno-Padilla's Tax Liability

The government separately moves for summary judgment on the amount of Moreno-Padilla's tax liability. (Count 1 Mot. at 2.) The IRS assessed unpaid tax liabilities in the amount of $239,284.00 for 1996 and $445.00 for 1997. (Id.) Moreno-Padilla submitted unsigned "amended returns" on or about September 2, 2003. (Id.) The government asserts that the original assessments were correct and that the amended returns contain improper deductions. (Id.)

In an action to collect taxes, the government bears the

8

burden of proof. United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983). A presumption of correctness attaches to the federal tax assessments, and their introduction establishes a prima facie case. Id. Where an assessment is based on a disallowance of claimed deductions, the government need not provide evidence to support the assessment for the presumption of correctness to attach. Karme v. Comm'r of Internal Revenue, 673 F.2d 1062, 1065 (9th Cir. 1982). If the presumption of correctness attaches, the burden of proof shifts to the taxpayer to show that the determination is arbitrary or erroneous. Palmer v. United States, 116 F.3d 1309, 1312 (9th Cir. 1997).

As all of the issues in this case involve the propriety of Moreno-Padilla's claimed deductions, a presumption of correctness attaches to the assessments, which Moreno-Padilla must rebut. Even considering her untimely opposition, Moreno-Padilla has not made a sufficient showing to establish a question of fact as to the validity of the deductions. In opposing summary judgment, Moreno-Padilla disputes only the disallowance of the net operating loss carryback deduction and not any of the other disallowed deductions. (Opp'n 2-4.)

The only evidence Moreno-Padilla offers to support her argument that the net operating loss carryback deduction was proper is that her tax preparer believed it was proper. However, Moreno-Padilla does not offer an affidavit in support of this position. She instead relies on the following evidence: (1) the deduction was included in the amended return; and (2) a statement

1 that her tax preparer will testify at trial as to the validity of
2 the deduction.[4] (<u>Id.</u> at 2, 5.) Reliance on the amended tax
3 return is insufficient, given the presumption of correctness
4 attaching to the government's assessment. Moreno-Padilla has the
5 burden of demonstrating the validity of the deduction. The
6 amended tax return does not specify the basis for the net
7 operating loss carryback deduction or provide factual support for
8 the deduction. (Schrock Decl. Ex. 5.) Reliance on the tax
9 preparer's proposed trial testimony, in the absence of an
10 affidavit, is likewise unavailing to create a genuine issue of
11 material fact. Fed. R. Civ. P. 56(e); <u>See also</u>, <u>S.A. Empresa De
12 Viacao Aerea Rio Grandense v. Walter Kidde & Co.</u>, 690 F.2d 1235,
13 1238 (9th Cir. 1980) (holding that a party cannot create a
14 genuine issue of material fact merely by making assertions in its
15 legal memoranda).

16 The government is entitled to a presumption of correctness
17 as to its assessments of Moreno-Padilla's tax liability. Moreno-
18 Padilla has failed to offer sufficient evidence to rebut that
19 presumption. Therefore, the motion for summary judgment as to
20 count one of the complaint is GRANTED. The court finds that the
21 government's assessments are correct and that Moreno-Padilla has

---

[4] The court declines to grant a continuance to permit Moreno-Padilla to obtain additional factual support for her opposition. Moreno-Padilla has had ample time to prepare her opposition to this motion. The motion was filed on February 11, 2005 and originally set for hearing on March 11, 2005. The hearing was continued only after Moreno-Padilla failed to file an opposition or statement of non-opposition, resulting, on March 2, 2005, in the issuance of an order to show cause.

unpaid accrued tax liabilities in the amounts of $429,755.03 for tax year 1996 and $734.23 for tax year 1997, plus any interest and penalties accruing since August 16, 2001.

III.

For the reasons set forth above, the motion for partial judgment is GRANTED as to the issue of the attachment of a tax lien to Padilla's interest in the property, but DENIED as to the issue of the existence and superiority of Patino's liens.  The motion for summary judgment on count one is GRANTED.

IT IS SO ORDERED.

Dated: 6/6/2005

_____
DAVID F. LEVI
United States District Judge

11